HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In re Venture Financial Group, Inc., | CASE NO. C16-5907-RBL |
| Debtor. | BANKRUPTCY NO. 13-46392-BDL |
| MARK D. WALDRON, CHAPTER 7 TRUSTEE FOR VENTURE FINANCIAL GROUP INC., | ADVERSARY NO. 14-04194-BDL |
| PLAINTIFF/APPELLEE, | MEMORANDUM |
| V. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS CAPACITY AS RECEIVER OF VENTURE BANK, | |
| DEFENDANT/APPELLANT. | |

THIS MATTER is before the Court on appeal from the bankruptcy court. The FDIC-R (Venture Bank's receiver) appeals the Bankruptcy Court's determination that Chapter 7 debtor Venture Financial Group (Venture Bank's owner) was entitled to $8,000,000 in carryback of loss tax refunds, and that FDIC-R was not.

The Bankruptcy Court determined that VFG had the contractual right to file tax returns on behalf of itself and Venture Bank, and the obligation to pay a portion of any tax refunds to

Venture Bank. VFG was therefore a debtor to Venture Bank, its creditor. It held that the relationship did not change even when FDIC-R applied for and obtained from the IRS the right to file tax returns (and to receive tax refunds) as an "alternative agent" on behalf of both VFG and Venture Bank.

FDIC-R appeals, arguing that VFG and Venture Bank's pre-existing Tax Allocation Agreement (TAA) does not apply where, as here, an alternative agent is properly appointed to (and does) file returns and directly receive refunds. It argues that the refunds reflect Venture Bank's losses, not VFG's, and that under the so-called "*Bob Richards* Rule," tax refunds resulting from the losses of one member of a consolidated group generally belong to that member:

> [Absent a contrary agreement], a tax refund resulting solely from offsetting the losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year should inure to the benefit of that member.

*W. Dealer Mgmt., Inc. v. England* (*In re Bob Richards Chrysler-Plymouth Corp., Inc.*), 473 F.2d 262, 265 (9th Cir. 1973).

FDIC-R also appeals the Bankruptcy Court's follow-on determination that its receipt of the refunds was a voidable preference: VFG filed for Chapter 7 Bankruptcy protection less than 90 days after the IRS first refunded money to FDIC-R. VFG's Chapter 7 trustee, Mark Waldron, asked the Bankruptcy Court to void the transfer as a preference, claiming that the refunds were on account of an antecedent debt—one VFG owed to FDIC-R (as Venture Bank's receiver) under the TAA, prior to the transfer. The Bankruptcy Court agreed and held that VFG's Bankruptcy estate owns the refunds and that Waldron was entitled to avoid the transfer and recover them from FDIC-R.

FDIC-R also argues that the Bankruptcy Court lacked jurisdiction because Waldron failed to seek the refunds through an administrative claims process under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). The Bankruptcy Court held that exhaustion of the FIRREA process was not required.

## I. BACKGROUND

Like many financial institutions, Venture Bank suffered major losses during the financial crisis, and was placed into receivership in 2009. FDIC-R was appointed as the bank's receiver. Two years later, the IRS granted FDIC-R the authority to file tax returns as alternative agent for both VFG and Venture Bank. Over the next three years, FDIC-R filed amended tax returns seeking refunds for carryback of losses dating to 2004, and the IRS issued more than $8,000,000 in tax refunds to FDIC-R.

In an effort to obtain this money, VFG (then itself insolvent) filed for Chapter 7 bankruptcy. Waldron claimed that the TAA entitled VFG to the refunds and obligated it to pay its creditor, Venture Bank, and that FDIC-R's appointment as an alternative agent did not change that contractual relationship. Waldron initiated this adversarial proceeding to avoid the transfer. He claimed that the IRS's payment of the refund to FDIC-R (as alternative agent) was a voidable preference: (1) FDIC-R was VFG's creditor and it benefitted from the payment; (2) the refund payment was on account of VFG's antecedent debt to FDIC-R; (3) VFG was insolvent at the time the IRS paid the refund to FDIC-R; (4) it occurred less than 90 days before VFG's bankruptcy; and (5) FDIC-R received (far) more than it would have had it instead filed a proof of claim[1] like any other unsecured creditor.

---

[1] FDIC-R also filed a proof of claim in VFG's bankruptcy, asserting a right to the refunds if the Bankruptcy Court determined they belonged to VFG's estate.

MEMORANDUM - 3

The adversary proceeding was tried to the Bankruptcy Court. It determined: (1) that the TAA created a debtor-creditor relationship between VFG and Venture Bank, and not a agency or trust relationship; (2) that FDIC-R's appointment as alternative agent did not alter or supersede the TAA; (3) that FDIC-R's direct receipt of the refunds from the IRS was nevertheless a preferential payment of an antecedent debt from VFG to its creditor: the FDIC-R subject to avoidance; and (4) that Waldron was not required to exhaust FIRREA's administrative claims process.

## II. STANDARD OF REVIEW

This Court reviews the bankruptcy court's findings of facts under the clearly erroneous standard, and its conclusions of law de novo. *In re Candland*, 90 F.3d 1466, 1469 (9th Cir. 1996). Mixed questions of law and fact are generally reviewed *de novo*. *Chubb & Son, Inc. v. Clark* (*In re Clark*), 262 B.R. 508, 514 (9th Cir. BAP 2001).

## III. ANALYSIS

**A. The TAA created a debtor-creditor relationship.**

FDIC-R argues that the Bankruptcy Court erred in determining that the TAA applied despite FDIC-R's alternate agent status, and in determining that the TAA entitled VFG to the refunds. It argues that the TAA did not address the refund process that actually took place, and therefore that it did not govern that process. FDIC-R argues that the *Bob Richards* Rule applies instead, and that under it the losses incurred by Venture Bank should inure to the bank's benefit, not VFG's:

> *Bob Richards* holds that "[a]bsent any differing agreement … a tax refund resulting solely from offsetting the losses of one member of a consolidated group against the income of that same member should inure to the benefit of that member." 473 F.2d at 265. The court noted that "[a]llowing the parent to keep any refunds arising solely from a subsidiary's losses simply because the parent and subsidiary chose a procedural device to facilitate their income tax reporting unjustly enriches the parent." *Id*.

[Dkt. # 6 at 18-19].

FDIC-R claims that the TAA "presupposes" that VFG is the agent for the consolidated group, but emphasizes that it says nothing about the situation in this case, where VFG is no longer the group's agent; the (alternative) agent was FDIC-R. It also points out that the TAA does not address the fate of refunds received by an entity other than VFG, and that VFG could have chosen to file a return itself. It argues that the TAA simply does not apply to this situation.

It also argues that, as a factual matter, the parties (VFG and Venture Bank) treated the refunds as the Bank's property, not VFG's. Thus, it claims, there was no "differing agreement" to preclude application of the *Bob Richards* rule. It cites a number of cases it claims hold that a "differing agreement" must be "clear and explicit" and that the default rule applies, even where there is a tax allocation agreement, if that agreement does not expressly require a different result. *See* Dkt. # 6 at 21-22.

The Bankruptcy Court rejected these arguments, factually and legally. It found that the TAA contained no language suggesting that VFG was acting as the bank's agent, and that it gave the bank no control over preparing or processing the consolidated returns (at least prior to the FDIC-R's involvement). The TAA unambiguously required VFG to pay the bank its share of any refund it received. But it did not require VFG to segregate those funds, and instead permitted it to use the tax refunds or commingle them with its own funds. Under the TAA, the bank did not bear the risk of any loss. And the Bankruptcy Court found that the parties to the contract had conducted their affairs consistent with these terms since at least 2004.

The Bankruptcy Court therefore concluded that the TAA created a debtor–creditor relationship, and not a principal and agent relationship, or a trust relationship. The Bankruptcy Court's conclusion was bolstered by a recent Ninth Circuit decision similarly holding that tax

refunds owed to a parent entity were property of its estate, under a similar tax allocation agreement and notwithstanding the *Bob Richards* rule. *See In re IndyMac Bancorp., Inc.*, 554 F. App'x 668, 670 (9th Cir. 2014). The Court there held that the agreement did not create an agency relationship because it did not give the bank the right to control its parent's (the would-be agent's) activities. There, as here, the creditor bank did not control any of VFG's activities and the *Bob Richards* rule did not operate to "trump" the TAA. *IndyMac* also rejected the bank's claim that the agreement created a trust relationship[2].

FDIC-R argues that the TAA did not give VFG the right to keep the funds; it instead addressed only "procedural matters." It argues that the Bankruptcy Court's reliance on *IndyMac* was error: the agreement there gave the parent "sole discretion" to prepare tax returns and to pay refunds, while it claims the TAA here was not so sweeping. It emphasizes that the TAA did not address (or purport to prohibit) the situation where an alternative agent actually files the return and receives[3] the refund. And it argues that the fact VFG had some discretion is not inconsistent with a finding that the TAA made it the bank's agent for purposes of tax returns and refunds.

FDIC-R emphasizes that VFG did not ever actually receive the bank's refunds. It claims the TAA does not address that situation, and that the Bankruptcy court erred in concluding that the TAA controlled such a situation.

Waldron argues persuasively that *Indymac* is analogous, persuasive, and correct. He also points out that it is not unique. Other authority holds a similar tax sharing agreement created a

---

[2] FDIC-R argues that it is claiming not a constructive trust, but rather an implied trust based on the agency relationship.

[3] The Bankruptcy Court rejected FDIC-R's argument that it stepped into VFG's shoes when it received the refunds as alternative agent. The Treasury Regulations surrounding such efforts do not purport to determine ownership.

debtor-creditor, not a principal-agent relationship. *See Rho Co., Inc. v. Department of Revenue*, 113 Wash. 2d 561, 570 (1989) (an agency relationship arises when two parties consent that one shall act under the control of the other); *Aebig v. Commercial Bank of Seattle*, 674 P.2d 696, 697 (Wash. Ct. App. 1984) (where one party receives funds and they are commingled with that party's other funds, and used as that party sees fit, "a debtor-creditor relationship exists, not a trust").

The TAA does not prohibit VFG from commingling the refunds with its other funds and using them for its own purpose. It gave the bank no control over VFG; instead, VFG had sole authority to make all the tax filing decisions. VFG was not Venture Bank's agent. The TAA created a debtor-creditor relationship, rather than a principal-agent relationship or a trust, resulting in a contractual obligation between debtor VFG and creditor Venture Bank with respect to the refunds.

The Bankruptcy Court determined that the fact FDIC-R filed returns and received refunds as an alternate agent did not mean that the TAA did not apply. This conclusion was correct, factually and legally. The Bankruptcy Court's determination of the facts were not clearly erroneous, they were correct. And its application of the law to those facts was correct. Those determinations are AFFIRMED.

**B. The IRS payment to FDIC-R was a voidable preference.**

FDIC-R also appeals the Bankruptcy Court's determination that the refunds were a voidable preference. Its argument is based almost exclusively on the claim that the TAA did not apply to the situation that arose, and that the FDIC-R's direct receipt of the refund from the IRS did not result from a "debt" owed to it by VFG, antecedent or otherwise. The resolution of the TAA's applicability, above, resolves this issue. The TAA applied, and it created a debtor-

creditor relationship that survived FDIC-R's appointment as alternative agent (and its efforts to file returns and obtain refunds).

The other elements of a preferential payment were clearly present. The transfer from the IRS to FDIC-R was on account of a debt incurred prior to FDIC-R's receipt of the refunds and was a voidable preference.

The Bankruptcy court's determination that the refunds were a voidable preference was correct and it is AFFIRMED.

**C. FIRREA's administrative claims process is not a bar to this preference action.**

Finally, FDIC-R reiterates its argument that the Bankruptcy Court lacked jurisdiction over Waldron's preference claim, because he had failed to comply with FIRREA's administrative claim procedures for recovering funds from the FDIC-R. The Bankruptcy Court rejected this argument, holding that FIRREA does not apply to this preference action. FDIC-R appeals this determination as well.

FIRREA established a mandatory and comprehensive claims process to allow FDIC-R to preserve the failed institution's assets without being burdened by complex and costly litigation. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., FSB*, 28 F.3d 376, 388 (3d Cir. 1994). It requires one claiming funds in the possession of a bank in receivership to seek them administratively before filing a lawsuit. If he does not, the Court does not have jurisdiction over the claim: *See* 12 U.S.C. § 1821(d)(13) ("no court shall have jurisdiction over . . . any claim or action for payment from . . . the assets of [FDIC-R] . . . or any claim relating to any act . . . of [the FDIC-R]," absent compliance with administrative claims procedure).

Waldron argued (and the Bankruptcy Court agreed) that FIRREA applies to a failed bank's creditors, and is not a bar to a debtor's preference action in Bankruptcy Court:

> [T]he FIRREA claims process does not apply to actions filed in bankruptcy court to recover preferential transfers, at least where the [receiver] has filed a proof of claim that exceeds the amount sought to be recovered by the debtor.

*Parker North American Corp. v. RTC* (*In re Parker North American Corp.*), 24 F.3d 1145, 1155 (9th Cir. 1994). FDIC-R argues that *Parker* does not apply, because there the receiver's proof of claim was larger than the debtor's preference claim, making the preference claim a set off. FDIC-R's proof of claim here *matched* Waldron's preference claim. FDIC-R also argues that Parker should be limited to its specific facts, presumably meaning to cases where the receiver's proof of claim exceeds the debtor's preference claim. It relies on the *Parker* concurrence and later authority holding that FIRREA applies to claims by debtors as well as creditors of failed banks. *McCarthy v. FDIC*, 348 F.3d 1075, 1077 (9th Cir. 2003).

But *McCarthy* specifically recognized that while FIRREA applies to (some) debtor's claims, the "special context" of bankruptcy warrants Parker's holding that it does not apply to preference claims in Bankruptcy Court:

> *Parker* arose in the special context of bankruptcy. It involved an adversary proceeding by a debtor in bankruptcy . . . to recover . . . a preferential transfer. . . . The question was whether the bankruptcy court had jurisdiction over the preference action against an institution for which the RTC had filed a proof of claim that exceeded the amount sought to be recovered by the debtor. We held that it did, explaining that the preference action incident to the RTC's collection efforts was not susceptible of resolution through FIRREA's claims procedure because it was not a claim by a creditor against the RTC; that Congress intended FIRREA to dispose of claims against failed financial institutions; and that bankruptcy courts have expertise to determine preference actions but the RTC does not. In this way we sought to harmonize the Bankruptcy Code and FIRREA so as to allow bankruptcy courts to determine matters in which they, not the RTC, have specific competence. But, as other courts have noted, *Parker* lacks force outside the bankruptcy context with which it was concerned.

*McCarthy*, 348 F.3d at 1078.

*McCarthy* did not undermine *Parker*'s application to this case; it supports the Bankruptcy Court's correct determination that FIRREA is not a bar to preference claims like this one. This determination is also AFFIRMED.

* * *

The Bankruptcy Court's decision is **AFFIRMED.**

IT IS SO ORDERED.

Dated this 15th day of March, 2018.

Ronald B. Leighton
United States District Judge